NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Hilma H. ERIKSON, Erik E. Erikson, doing business as Detroit Plastic Products Company, a Copartnership, Erin Plastic Products Company, a corporation, and Detroit Plastic Products Company, a corporation, Respondents and Cross-Petitioners.

No. 13819.

United States Court of Appeals
Sixth Circuit.

Jan. 12, 1960.

Richard Scupi, Washington, D. C., Stuart Rothman, Thomas J. McDermott, Marcel Mallet-Prevost, Melvin Pollack and James A. Flynn, Washington, D. C., on the brief, for petitioner.

Dee Edwards, Detroit, Mich., for respondents.

Before SIMONS, Senior Circuit Judge, and MARTIN and CECIL, Circuit Judges.

PER CURIAM.

The National Labor Relations Board has petitioned this Court for enforcement of its Order against the respondents.

The hearing of the complaint filed before the Board was conducted by a Trial Examiner who made an intermediate report containing findings of fact and conclusions of law. Exceptions to the report filed on behalf of the respondents were heard by a three member panel of the Board.

The Board adopted the findings, conclusions and recommendations of the Trial Examiner and found that the Respondents violated Section 8(a) (1) of the National Labor Relations Act as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.), by (1) interrogating employees and applicants for employment

concerning their union sympathies and activities; (2) threatening shutdown or sale of the plant and discharges of individual employees; (3) attempting to form an unaffiliated rival union; (4) actually shutting down the plant, thereby curtailing plant operations and laying off employees; and (5) issuing undeserved warning notices of discharges for allegedly bad work.

The Board further found that the Respondents violated Section 8(a) (3) and (1) of the Act by discharging Catherine Elkins, Julia Vadasy, Janice Witherite, Angeline Romesburg, Bessie Pappas, and Mary Louise Wuestewald.

The Respondents deny these violations.

The questions presented are entirely factual. An examination and study of the record reveals that there is substantial evidence to support the findings of the Board that Section 8(a) (1) of the Act was violated in respect to findings (1), (2), (3) and (5) as set forth above.

Violations found in connection with discharging employees present more difficult questions, particularly with reference to Julia Vadasy and Mary Louise Wuestewald.

Julia Vadasy sustained an injury which resulted in a finger being amputated and she was off for about four months. Her physician gave her a certificate to return for light work. The first night of her return her foreman put her to work on a machine. She was not able to do this work and her physician gave her another certificate for light work. William P. Richards, on behalf of the management, then wrote her a letter dated June 1, 1956 (General Counsel's Exhibit 12), stating that he would try to place her on a job of packing on the day shift. In the meantime she joined the Union and engaged in its activities. At this time she was about two months pregnant. This was not known to the Respondents and may not have been known by her. This would not have prevented her from working for at least several months. About three weeks after the letter of June 1, she applied for unemployment compensation. She was then notified by letter dated June 22, 1956, that her employment was terminated (General Counsel's Exhibit 8).

Mary Louise Wuestewald started work in October, 1955. She was off on leave from December, 1955 until April 1, 1956. She was again on leave from June 29, 1956 until September 4, 1956. These were leaves at her request and not layoffs. When she returned on September 4, her foreman put her to work but Mr. Erik Erikson came around and said it was a policy of the company not to "bump" an employee in order to return one who had been on leave. This was true even though the employee had been employed subsequent to the one on leave. Wuestewald was laid off and told she would have to wait for an opening.

She then went to work in the same building for Jones Plastics. This business was operated by Mr. Morrison, the father-in-law of Erik Erikson. She worked here until December 14, when she was laid off because of lack of work. She was a member of the Union, was on its organizing committee and voted for it while she worked for Mr. Morrison. During this time she never asked the respondents for work and was never offered employment by them, although other girls were given employment. She testified that she wanted to go back with Respondents.

Section 160(e) of the Act provides, "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

There is substantial evidence that the Respondents were bitterly opposed to the Unionization of their plant and that these employees, including Vadasy and Wuestewald, were active in organizing the Union.

Considering the antipathy of the Respondents to Unions and their efforts to prevent the organization of their plant, there is substantial evidence as dis-

closed by the record as a whole that all of these employees were discharged because of their Union activities. Substantial evidence from which a reasonable inference may be drawn is sufficient. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 596, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S.Ct. 960, 86 L.Ed. 1305; United Fireworks Mfg. Co. v. National Labor Relations Board, 6 Cir., 252 F.2d 428, 430; National Labor Relations Board v. Ford, 6 Cir., 170 F.2d 735, 739.

On Saturday, June 30, 1956 Mr. Richards, Production Manager of Respondents, announced that the plant would close indefinitely for financial reasons. Production was resumed July 10. The Board found that this shut down was for the purpose of discouraging Union membership and activities and, as such, was a violation of Section 8(a) (1) of the Act.

The Respondents' bank account was overdrawn at this time and its payroll was running in excess of $2500 a week. Mr. Erikson was in California negotiating a large contract. Before the plant could be reopened, the management had to borrow $36,000.

From a careful review and analysis of the evidence we are of the opinion that the shutdown was a bona fide one for economic reasons. There is a failure of any degree of substantial evidence to support the finding of the Board on this violation.

For the reasons herein stated, the Order of the Board will be modified by eliminating therefrom subdivision 2(b) requiring the Respondents to make whole each of the employees involved in the shutdown. The paragraph with reference to this part of the Order will be deleted from the "Notice to all employees."

The Order of the Board subject to this modification will be enforced.